**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HOLLIE FITZHENRY, *on behalf of herself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

**v.**

MATTOS HOSPITALITY LLC,
TOURBILLON1 LLC (d/b/a LODI),
TOURBILLON47 LLC (d/b/a ESTELA),
TOURBILLON45 LLC (d/b/a ALTRO PARADISO),
TOURBILLON75 LLC (f/d/b/a FLORA BAR),
TOURBILLON9 LLC (f/d/b/a CORNER BAR and SWAN ROOM),
and IGNACIO MATTOS NOYA (a/k/a IGNACIO MATTOS),

Defendants.

---

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff HOLLIE FITZHENRY ("Plaintiff" or "FITZHENRY"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, MATTOS HOSPITALITY LLC, TOURBILLON1 LLC, TOURBILLON47 LLC, TOURBILLON45 LLC, TOURBILLON75 LLC, TOURBILLON9 LLC (the "Corporate Defendants"), and IGNACIO MATTOS NOYA (the "Individual Defendant" and collectively with the Corporate Defendants, the "Defendants") and state as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages and overtime premiums due to time shaving, (2) unpaid wages and overtime premiums due to invalid tip credit deductions, (3) unpaid tips due to an illegal gratuity retention policy, (4) unpaid wages due to invalid meal credit deductions, (5) liquidated damages for unpaid wages, overtime, and gratuities, and (6) attorneys' fees and costs.

2. Plaintiff alleges, pursuant to the New York Labor Law ("NYLL"), that she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages and overtime premiums due to time shaving, (2) unpaid wages and overtime premiums due to invalid tip credit deductions, (3) unpaid tips due to an illegal gratuity retention policy, (4) unpaid wages due to invalid meal credit deductions, (5) unpaid spread of hours premiums, (6) unpaid call-in pay premiums, (7) liquidated damages for unpaid wages, overtime, gratuities, and premium pay, (8) statutory penalties due to WTPA violations, and (9) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 29 U.S.C. § 2617(a)(2), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5. Plaintiff FITZHENRY, for all relevant time periods, was a resident of Kings County, New York.

6. Corporate Defendant MATTOS HOSPITALITY LLC is a domestic limited liability company which operates “Mattos Hospitality” at 131 Varick Street, Suite 1034, New York, NY 10003. Mattos Hospitality is the parent company to the two other Corporate Defendants. MATTOS HOSPITALITY LLC was formerly known as MATTER HOUSE LLC until July 14, 2023. Mattos Hospitality is a restaurant group that owned and operated the following restaurants throughout the relevant period:

i. “Lodi” - 1 Rockefeller Plaza, New York, NY 10020;

ii. “Estela” - 47 East Houston Street, New York, NY 10012;

iii. “Altro Paradiso” - 234 Spring Street, New York, NY 10013;

iv. “Flora Bar” - 945 Madison Avenue, New York, New York 10021 (closed as of February 2021); and

v. “Corner Bar” and “Swan Room” (located inside the Nine Orchard hotel) - 10 Allen St, New York, NY 10002 (no longer operated by Mattos Hospitality as of Summer 2024)

(collectively, the “Restaurants”).[1]

7. Corporate Defendant TOURBILLON1 LLC is a domestic limited liability company which operates Lodi - a restaurant, bar, cafe, and event venue that provides Italian cuisine and specialty cocktails.

8. Corporate Defendant TOURBILLON45 LLC is a domestic limited liability company which operates Altro Paradiso - a restaurant, bar, and event venue that provides Italian cuisine and specialty cocktails.

[1] https://mattoshospitality.com

9. Corporate Defendant TOURBILLON47 LLC is a domestic limited liability company which operates Estela - a restaurant, bar, and event venue that provides modern American and Mediterranean cuisine and specialty cocktails.

10. Corporate Defendant TOURBILLON75 LLC is a domestic limited liability company which formerly operated Flora Bar (a restaurant and café which provided a seafood focused menu) until February 2021.

11. Corporate Defendant TOURBILLON75 LLC is a domestic limited liability company which formerly operated Corner Bar (an upscale bar which provided modern American cuisine and bar food as well as wines and specialty cocktails) and Swan Room (an upscale cocktail lounge which provided American bar food and specialty cocktails) inside the Nine Orchard hotel until the summer of 2024.

12. Individual Defendant IGNACIO MATTOS NOYA (a/k/a IGNACIO MATTOS) is the Owner, Founder, Executive Chef, and managing member of all Corporate Defendants.[2]

13. At all relevant times, the Individual Defendant exercised direct and actual functional control and oversight of the business and financial operations, as well as all other general affairs, of Mattos Hospitality and all its subsidiaries and Restaurants (including all other Corporate Defendants).

14. At all relevant times, the Individual Defendant exercised direct and actual control over the employment terms and conditions and the compensation structures of all employees of Mattos Hospitality and the Restaurants, including Plaintiff, FLSA Collective Plaintiffs, and Class Members.

---

[2] https://mattoshospitality.com/pages/leadership

15. At all relevant times, the Individual Defendant held and exercised direct and actual authority, control, and oversight over all Managers and Supervisors of the Restaurants' employees, including Plaintiff, FLSA Collective Plaintiffs, and Class Members.

16. At all relevant times, the Individual Defendant exercised the direct and actual power and authority (and also delegated the power and authority to managers and supervisors) to: (i) hire and fire all employees and Managers of the Restaurants (including Plaintiff, FLSA Collective Plaintiffs, and Class Members), (ii) determine their hourly rates or salaries, frequencies of payments, and means of payments, (iii) establish, alter, or otherwise affect their work schedules, (iv) otherwise directly or indirectly affect the qualities, terms and conditions of their employments, and (v) maintain their employment records.

17. Throughout the relevant period, the Individual Defendant directly ensured that all his Restaurants operated efficiently and profitably by visiting the Restaurants to: (i) inspect the operations and quality of food, service, and hygiene of the Restaurants, (ii) meet and confer with the Restaurants' management teams to discuss operations, sales, and overall status of the restaurant and its employees, (iii) pick up or drop off supplies, ingredients, or paperwork, (iv) personally supervise employees (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) and managers, and monitor their individual performances of duties and behaviors to ensure they effectively completed their job duties, (v) directly or indirectly reprimand any employees (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) or managers who did not perform their duties sufficiently or correctly, or displayed inappropriate behavior.

18. Throughout the relevant period, Plaintiff, FLSA Collective Plaintiffs, and Class Members would be made aware that the Individual Defendant was the owner of their respective Restaurants. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members had

the ability to, and/or actually did, complain to the Individual Defendant (via direct contact during his visits to their respective Restaurants or by digital communications) directly regarding any of the terms of their employments, and the Individual Defendant would have the actual power and authority to immediately, directly, and actually affect any changes to the qualities and terms of their employments to appease their complaints (including, but not limited to, immediately changing their schedules, compensation, locations, or positions).

19. At all relevant times, the Individual Defendant's roles, and the decisions made in connection to his roles, directly and actually affected the nature, conditions, and circumstances of Plaintiff's, FLSA Collective Plaintiffs', and Class Members' employments.

20. The Individual Defendant is registered as a Principal and Managing Member of all the Restaurants with The New York State Liquor Authority (*see* **Exhibit A**). Pursuant to the New York State Liquor Authority Handbook for Retail Liquor Licensees, New York State liquor license holders must (1) prevent sales of liquor to minors, (2) prevent disorder, (3) confine service and consumption of liquor to the licensed area, (4) prevent sales of liquor to visibly intoxicated persons, (5) prohibit their businesses from offering unlimited drink specials, (6) ensure licensed restaurants have suitable kitchen facilities to prepare and serve a full menu whenever their business is open, (7) prevent individuals from appearing nude or partially nude on the licensed premises, (8) prevent the premixing of liquor, (9) prevent the refilling of liquor, (10) prevent possession of untaxed cigarettes & tobacco products, (11) prevent contamination of bottles, (12) maintain adequate books and records of all transactions involving the licensed business, (13) ensure proper identification of all beer taps, (14) ensure compliance with all stipulations and conditions of the liquor license agreement, (15) comply with all state and local laws and regulations governing the operations of the licensed business. *See* the New York State

Liquor Authority Handbook for Retail Liquor Licensees, as amended July 31, 2025, pgs. 17-21.[3] Because the Individual Defendant is the liquor licensee for both Restaurants, the Individual Defendant is required by New York State law to personally ensure both Restaurants comply with the above 15 requirements. Specifically:

> "You as the licensee are responsible for the activities of employees and patrons in all parts of the licensed premises (even if you are not always physically present) to ensure that the business is operating in accordance with the ABCL. The following are common issues faced by retailers that could subject you to disciplinary action if you do not meet your responsibilities as a licensee." *Id.*, pg. 17. [3]

21. Therefore, in order for the Individual Defendant to comply with his legal responsibilities as the license holder of all Restaurants, he is required to visit the premises of all Restaurants and conduct regular internal auditing of the operations of all Restaurants.

22. As the liquor licensee for all Restaurants, the Individual Defendant is required by New York State law to personally impose a very specific degree of management and control of all Restaurants' operations and employee performance and to also comply with all state and local laws which govern the Restaurants' business operations, including (i) the New York Labor Law, (ii) the New York Codes, Rules and Regulations, (iii) the New York City Administrative Code, (iv) the New York State Human Rights Law, and (v) the New York City Human Rights Law, among others. Failure to do so would be in violation of Defendants' liquor license agreements and the provisions of the New York State Alcoholic Beverage Control Law, which could result in disciplinary action by the New York State Liquor Authority, including (i) arrest, (ii) fines of up to $10,000 per violation, or (iii) the suspension, cancellation, or revocation of the liquor license. *See id.*; *see also* the New York Alcoholic Beverage Control Law, Chapter 478 of the Laws of 1934.

---

[3] https://sla.ny.gov/system/files/documents/2025/08/stateliquorauthority-retaillicenseeshandbookrevised7-31-2025.pdf

23. At all relevant times, the Individual Defendant complied with the New York State Alcoholic Beverage Control Law and the provisions of his liquor license agreements with the New York State Liquor Authority (except for his requirement to comply with all other state and local laws) by personally appropriately managing and controlling the operations of both Restaurants, sufficiently supervising its employees, and maintaining all necessary books and records.

24. At all relevant times, Defendants collectively operated the Restaurants as a single integrated enterprise. Specifically:

(a) All Corporate Defendants are under the common control, supervision, management, governance, and bookkeeping of the Individual Defendant;

(b) Defendants utilize a centralized human resources department at Mattos Hospitality's corporate headquarters which (i) administers, (ii) manages human relations, (iii) manages employee applying, hiring, onboarding, and offboarding,[4] (iv) handles inquiries, (v) enforces policies, and (vi) maintains employee records for all employees of the Restaurants (including Plaintiff, FLSA Collective Plaintiffs, and Class Members);

(c) Defendants utilize a centralized payroll department at Mattos Hospitality's corporate headquarters which (i) calculates wages and deductions, (ii) processes and distributes payments, (iii) prepares and generates payroll reports, (iv) ensures compliance with payroll tax laws, (v) handles inquiries and discrepancies, (vi) administers benefits, and (vii) maintains financial records for all employees of the Restaurants (including Plaintiff, FLSA Collective Plaintiffs, and Class Members);

[4] https://mattoshospitality.com/pages/careers

(d) Employees of all Corporate Defendants (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) are provided the same employee handbook and subject to the same policies, procedures, and guidelines within such handbook, which is published by Mattos Hospitality (*see* **Exhibit B,** a copy of the employee handbook Defendants provided to Plaintiff in March 2022) Defendants' employee handbook:

i. Makes it clear to Defendants' employees that Mattos Hospitality controls all Restaurants' employment terms and handles all Restaurants' employees' (including Plaintiff's, FLSA Collective Plaintiffs', and Class Members') (i) grievances, (ii) inquiries, (iii) discrepancies, (iv) immigration compliance, (v) equal employment opportunity provisions, (vi) accommodation requests, (vii) maintenance of personnel files, (viii) timekeeping, (ix) employee meal provisions, (x) tip pooling, (xi) administration of employment benefits, (xii) administration of unemployment benefits, (xiii) administration of health insurance, and (xiv) administration of paid time off, among other employee affairs. *Id*;

ii. Directs Defendants' employees to send any prospective emails to Defendants' human resources department or managers of the Restaurants at email addresses hosted by Mattos Hospitality's domain, mattos-hospitality.com, including HR@mattos-hospitality.com; Altro-foh@mattos-hospitality.com; Lodi-

foh@mattos-hospitality.com; and Estela-foh@mattos-hospitality.com. *Id.*, pgs. 3, 8, 11, 26-27, 31;

iii. States that the Individual Defendant is the only person who has the authority to (i) change the at-will status of Defendants' employees' employment, or (ii) enter into employment contracts between Mattos Hospitality and any of Defendants' employees at Mattos Hospitality and the Restaurants. *Id.*, pg. 2 ("ONLY THE OWNER OR OWNERS OF MATTOS HOSPITALITY IS AUTHORIZED TO ENTER INTO ANY EMPLOYMENT CONTRACT"); *Id.*, pg. 3 ("No one other than an Owner of the Restaurant has the authority to alter this arrangement, to enter into an agreement for employment for a specified period, or to make any agreement contrary to this policy. Furthermore, any agreement that alters the "at-will" employment relationship must be in writing and must be signed by you and the Owner of the Restaurant");

iv. States that only the Individual Defendant may make statements to media on behalf of Mattos Hospitality and/or any of the Restaurants. *Id.*, pg. 33;

v. States that all equipment and supplies on the Restaurants' premises are property of Mattos Hospitality. *Id.*, pg. 18;

vi. States that Corporate Defendants TOURBILLON1 LLC, TOURBILLON47 LLC, TOURBILLON45 LLC, and TOURBILLON9 LLC are part of the Mattos Hospitality enterprise

(and only excludes the remaining Corporate Defendant because this copy of the handbook was published in 2022 and the remaining Corporate Defendant closed in 2021). *Id.*, pg. 71;

vii. States that Mattos Hospitality controls the operating hours of all Restaurants. *Id.*, pgs. 62-63; and

viii. States that all Restaurants utilize the Toast Tab system for timekeeping and sales. *Id.*, pgs. 28-29.

(e) The different tip notices Defendants give to employees of different Restaurants list the same email and phone number for their human resources department. *See* **Exhibit C**.

(f) At all relevant times, employees of any of the Restaurants (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) had the ability to, and/or actually did, easily and freely transfer to or interchange between Defendants' different Restaurants due to the Restaurants' common management by Mattos Hospitality and their utilization of centralized human resources and payroll departments. Throughout Plaintiff's employment, Defendants interchanged Plaintiff between Altro Paradiso and Estela whenever they needed to (as well as other employees and Managers between all Restaurants), and were able to quickly and easily do so due to the foregoing reasons;

(g) Defendants advertise the Restaurants jointly in multiple publications, referring to the Individual Defendant as the owner. *See* **Exhibit D**.

(h) Defendants list and advertise the Restaurants jointly on their websites and social media profiles. For example, the Restaurants all state on their Instagram bios that they are "sister restaurants" with one another. *See* **Exhibit E**.

(i) Moreover, the Restaurants advertise on their social media profiles that they are all owned by Individual Defendant IGNACIO MATTOS. For example, on April 25, 2024, all Restaurants posted the magazine cover of an issue of "The Cult 100" to their Instagram accounts, which features Individual Defendant IGNACIO MATTOS. Additionally, all the Restaurants' posts feature the exact same caption. *See* **Exhibit F**.

(j) All Corporate Defendants are listed together under Corporate Defendant MATTOS HOSPITALITY LLC's website. Moreover, job listings for all locations are listed on this website. *See* **Exhibit G**.

(k) Corporate Defendant MATTOS HOSPITALITY LLC additionally posts job listings on LinkedIn for positions in which employees perform duties at multiple locations. *See* **Exhibit H**.

(l) The Restaurants all have the same vendors, including payroll providers, produce suppliers, and website developers. For example, all Restaurants use Toast Tab, a restaurant management system, as a platform to sell gift cards.

25. At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

26. At all relevant times, the work performed by Plaintiff and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt front-of-house persons (including Hosts, Waiters, Servers, Bussers, Bartenders, Barbacks, Food Runners, Delivery Persons, Cooks. Dishwashers, Food Preparers, and Porters, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

28. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their properly owed wages, overtime premiums at one and a half times their regular rates for all hours worked over forty (40) in a workweek, and tips due to Defendants' invalid tip credit policy, invalid gratuity retention policy, and invalid meal credit policy.

29. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

30. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house persons (including Hosts,

Waiters, Servers, Bussers, Bartenders, Barbacks, Food Runners, Delivery Persons, Cooks. Dishwashers, Food Preparers, and Porters, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

31. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

32. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of the Class and the Tipped Subclass.

33. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' (1) failure to pay wages and overtime premiums due to timeshaving, (2) failure to pay wages due to invalid meal credit deductions, (3) failure to pay spread of hours premiums, (4) failure to pay call-in pay premiums, (5) failure to

provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law, and (6) failure to provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures of Defendants.

34. Furthermore, Plaintiff and the Tipped Subclass also suffered as a result of Defendants' failure to pay them the proper minimum wage, Defendants' unlawful withholding of gratuities through an invalid tip pooling scheme, and Defendants' unlawful misappropriation of the tips that they earned. Plaintiff and the Tipped Subclass members were subjected to Defendants' policy and practice of deducting a tip credit despite Defendants' failure to observe requirements of the NYLL. In violation of the NYLL, Defendants (i) failed to properly provide tip credit notice, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) claimed tip credit for more than thirty (30) minutes of uninterrupted and continuous non-tipped work, and (iv) failed to accurately track daily tips earned or maintain records thereof.

35. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

36. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

37. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their

employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

38. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of the New York Labor Law;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e) Whether Defendants paid Plaintiff and Class Members the proper compensation for all the hours worked;

f) Whether Defendants properly compensated overtime premiums to Plaintiff and Class Members for their overtime hours worked under New York State law;

g) Whether Defendants paid Plaintiff and Tipped Subclass Members the New York State minimum wage for all hours worked;

h) Whether Defendants properly provided notice to Plaintiff and Tipped Subclass Members that Defendants were deducting tip credits from their wages;

i) Whether Defendants provided proper wage statements informing Plaintiff and Tipped Subclass Members of the amount of tip credits deducted from their wages for each payment period, their proper overtime rates of compensation, and other information Defendants were required to provide to them on their wage statements, as provided under the New York Labor Law;

j) Whether Defendants deducted the proper amounts of tip credit allowance from Plaintiff's and Tipped Subclass Members' wages under the New York Labor Law;

k) Whether Defendants required Plaintiff and Tipped Subclass Members to perform non-tipped work for more than 20% of their workday;

l) Whether Defendants required Plaintiff and Tipped Subclass Members to perform non-tipped work for continuous periods of time exceeding 30 minutes;

m) Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

n) Whether Defendants illegally retained gratuities earned by and intended for Plaintiff and Tipped Subclass Members;

o) Whether Defendants included all four (4) food groups in meals provided to Plaintiff and Class Members;

p) Whether Defendants subjected Plaintiff and Class Members to an invalid meal credit policy;

q) Whether Defendants deducted reasonable and lawful amounts for their meal credits;

r) Whether Defendants paid Plaintiff and Class Members their properly owed spread of hours premiums for all their workdays with a spread of ten or more hours;

s) Whether Defendants required Plaintiff and Class Members to report to scheduled shifts for less than 3 hours;

t) Whether Defendants compensated call-in pay premiums to Plaintiff and Class Members;

u) Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

v) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law.

## STATEMENT OF FACTS

### i. Background of Plaintiff's Employment with Defendants

39. In or around February 2019, Plaintiff FITZHENRY was hired by Defendants to work as a Bartender at Defendants' Estela location. In or around 2022, Defendants transferred Plaintiff to Altro Paradiso to support Defendants in recovering from the COVID-19 shutdown. Once Altro Paradiso recovered, Defendants transferred Plaintiff back to Estela. Plaintiff's employment with Defendants was terminated in or around June 2023.

40. Throughout her employment, Plaintiff FITZHENRY was scheduled by Defendants to work five (5) days per week, for between seven and one-half (7.50) to eight and

one-half (8.50) hours per day, for a total of between thirty-seven and one-half (37.50) to forty-two and one-half (42.50) hours per week. At all relevant times, Plaintiff worked dinner shifts which started between 2:30 pm and 3:00 pm, and ended between 10:30 pm and 11:00 pm. Additionally, Defendants frequently required Plaintiff to work double shifts, which lasted between eleven (11) and twelve (12) hours. At all relevant times, Defendants scheduled FLSA Collective Plaintiffs and Class Members to work similar amounts of days and hours per week.

41. Throughout her employment, Plaintiff FITZHENRY was paid by Defendants at a tipped credit hourly rate of $10.60 per hour, for all hours worked. Around once a week, Defendants held private events at their Restaurants. For some of these events, Plaintiff FITZHENRY was paid at an hourly rate of $45.00, without receiving any gratuity compensation. At all relevant times, Defendants paid FLSA Collective Plaintiffs and Tipped Subclass Members at similar rates.

**ii. Plaintiff's Time Shaving Claim**

42. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members were not paid for all hours worked, due to time shaving, in violation of the FLSA and the NYLL.

43. Throughout Plaintiff's employment, Plaintiff and all other employees were required by Defendants to clock out for a 30-minute meal break. Defendants' policy here is clearly stated in their handbook. *See* **Exhibit B**, pg. 29.

44. At least two (2) times per week, due to high volume of business, Plaintiff was required to work through her thirty (30) minute meal break. Despite being required to work through these meal breaks, Plaintiff was still required to clock out for thirty (30) minutes. Defendants prohibited Plaintiff from clocking back in until the thirty (30) minute period elapsed.

Because Plaintiff was clocked out during her meal breaks even when she was working, she was not compensated for this time.

45. Similarly, FLSA Collective Plaintiffs and Class Members were also often required to work during their meal breaks. Like Plaintiff, they were required to clock-out during their meal break even if they were working through it. As a result, Defendants time shaved Plaintiff, FLSA Collective Plaintiffs, and Class Members thirty (30) minutes for each shift they were required to work through their meal break.

46. Because Defendants required Plaintiff, FLSA Collective Plaintiffs, and Class Members to work through their meal breaks at least two (2) times per week, they were shorted one (1) hour's worth of wages each week.

47. Based on Plaintiff's experiences, observations, and conversation with co-workers, Defendants implemented the same time-shaving policies across all Restaurants.

48. Defendants' willfulness here is evident because Defendants' handbook reveals Defendants' awareness of their legal obligation to provide employees with a free-and-clear meal break period under federal, state, and local labor laws. *See* **Exhibit B**, pgs. 24, 28-29. Despite their awareness, Defendants still required employees to perform off-the-clock work throughout their unpaid meal break periods.

49. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members the full amount of their properly owed wages as a result of Defendants' time shaving policy, in violation of the FLSA and the NYLL.

**iii. <u>Plaintiff's Invalid Tip Credit Policy Claim</u>**

50. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members were subjected to Defendants' invalid tip credit policy, in violation of the FLSA and the NYLL.

51. Throughout Plaintiff's employments, Defendants deducted a tip credit from Plaintiff's wages for all hours she worked.

52. However, Defendants were not actually entitled to deduct any tip credits from Plaintiff's, FLSA Collective Plaintiffs', and Tipped Subclass Members' wages under the FLSA or the NYLL because Defendants: (i) failed to provide accurate tip credit notices to them at their hirings, and (ii) deducted tip credits from their wages for all they hours worked despite Defendants having caused them to engage in non-tipped duties for (a) continuous periods of time exceeding thirty (30) minutes ("30 Minute Rule"), and/or (b) more than 20% of the work they performed each week ("20/80 Rule").

53. Throughout Plaintiff's employment, Defendants required Plaintiff to engage in non-tipped duties such as (i) polishing and rolling silverware, (ii) polishing glassware, (iii) sweeping and mopping the restaurant and bar, (iv) changing and disposing trash, (v) maintaining the bar's ice wells' ice supply, (vi) stocking the bar, (vii) setting up and/or breaking down the outside dining area (which included over 60 tables and chairs), among others. Plaintiff would regularly spend 3.00 to 6.00 hours per single shift doing non-tipped side work, including periods of at least 30 minutes of continuous time. Additionally, Plaintiff was frequently required by Defendants to constantly polish silverware and glassware throughout the entirety of a shift (up to 8.50 hours).

54. Throughout Plaintiff's employment, Altro Paradiso's and Estela's dinner service hours started at 5:00 pm (*see* **Exhibit B**, pg. 62; *see also* https://estelanyc.com/#hours-location and https://altroparadiso.com/#hours-location). However, Defendants would usually require Plaintiff to begin work up to 2 ½ hours before dinner service started (between 2:30 pm and 3:00 pm) in order to set up the Restaurants for dinner service. Additionally, after dinner service ended at 10:30 pm, Plaintiff was required to engage in closing duties for the remaining 1 ½ hours of her shifts. This resulted in Plaintiff performing mandated non-tipped sidework continuously for approximately 4 hours each shift, in violation of the 30 Minute Rule.

55. Because Plaintiff's dinner shifts were 7.50 to 8.50 hours long, Plaintiff's 4.00 to 8.50 hours of non-tipped side work always took up about 47.05% (4.00 ÷ 8.50) to 100% (8.50 ÷ 8.50) of Plaintiff's hours worked. Such excessive amounts of mandated non-tipped duties clearly invalidate Defendants' tip credit deductions.

56. Additionally, Plaintiff and Tipped Subclass Members never received notices from Defendants informing them of Defendants' actual tip credit policy. Although Defendants did provide employees with a tip pool policy which included language that informed employees that Defendants would be deducting tip credits from their wages as well as some other lawfully required language (*see* **Exhibit C**), Defendants' tip pool policy improperly mislead their employees to believe that Defendants would only deduct the "allowable tip credit […] in compliance with federal, state and local labor law" (*id.*). Defendants failed to properly inform employees that Defendants would be intentionally noncompliant with labor laws, or that Defendants are lawfully prohibited from deducting any invalid tip credits for all workhours which are noncompliant with the 20/80 Rule and/or the 30 Minute Rule. Instead, Defendants intentionally made negligent misrepresentations to employees that Defendants are permitted to

pay them at a regular tipped credit hourly wage for "all hours under 40 in a work week" (*id.*) and an overtime tipped credit hourly wage for "for all overtime hours that exceed 40 in a work week" (*id.*), regardless of whether any of these hours comply with the 20/80 Rule or the 30 Minute Rule, which is not true. As explained above, Defendants' actual tip credit policy failed to comply with federal and state labor laws because Defendants tip credit deductions violated the 20/80 Rule and the 30 Minute Rule. As such, Plaintiff and Tipped Subclass Members were not properly informed of Defendants' actual tip credit policy, instead, Defendants fraudulently mislead them by informing them of a fabricated tip credit policy that Defendants were lawfully required to adopt but did not actually utilize or subject their employees to. Further, due to Defendants' negligent misrepresentations within their tip credit notices, Defendants' tip credit notices are void.

57. As a direct result of Defendants' invalid tip credit policy, (i) Plaintiff and Tipped Subclass Members were paid below the New York State minimum wage in violation of the NYLL (*see* 12 N.Y.C.R.R. § 146-1.2, *et seq*), and (ii) Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members were not paid proper overtime premium rates for all hours they worked over 40 hours per workweek in violation of the FLSA and the NYLL.

58. At all relevant times, Defendants knowingly and willfully operated their business with a policy of deducting invalid tip credits from Plaintiff's, FLSA Collective Plaintiffs', and Tipped Subclass Members' wages, in violation of the FLSA and the NYLL.

**iv. <u>Plaintiff's Illegal Gratuity Retention Claim</u>**

59. Throughout her employment, Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members were subjected to Defendants' illegal gratuity retention policies, in violation of the FLSA and the NYLL.

60. Around once a week during Plaintiff's employment, Defendants' Restaurants hosted private events/parties. However, for some of these events, Defendants would pay Plaintiff at an hourly rate of $45.00 per hour. For every event where Defendants paid Plaintiff at the $45.00 hourly rate, Defendants would keep all gratuities from the event, which were earned by and intended for Plaintiff and other service staff, for themselves.

61. Additionally, Defendants intentionally selected which events they would retain gratuities from. Defendants' gratuity retention scheme required them to raise Plaintiff's and other service staff members' wages from $10.60 per hour to $45.00 per hour. Defendants only chose to initiate this scheme when the gratuities they would retain would outweigh the cost of raising employees' wages by over 4 times.

62. Plaintiff's, FLSA Collective Plaintiffs' and Tipped Subclass Members' tips and gratuities are covered under the meaning of New York law, 12 N.Y.C.R.R. § 142-2.21. In New York, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities and other surcharges or fees, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." NYLL § 196-d.

63. Similarly, Plaintiff's, FLSA Collective Plaintiffs' and Tipped Subclass Members' tips and gratuities are covered under the meaning of the FLSA, 29 C.F.R. § 531.52. Pursuant to the FLSA, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B).

64. Further, Defendants failed to provide customers with an explicit written statement that any portions of surcharges, service fees, and gratuities left on tables would be retained by

Defendants' management. Defendants' failure to provide notice of their retention of tips from tipped employees was inadequate to satisfy the requirements of *Sarmiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008).

65. Defendants' willfulness here is obvious because they (i) only retained gratuities in the instances where they did not deduct a tip credit from employees' wages, and (ii) intentionally selected which events they would retain gratuities from because they required the retained gratuities to outweigh the cost of raising employees' wages by over 4 times.

66. Defendants' willfulness here is also evident because Defendants' own handbook includes the same tip earnings policy language as the FLSA and the NYLL, whereby tipped employees must either retain the full amount of their tip earnings or share them in a pool that is limited to only employees who customarily and regularly receive tips. *See* **Exhibit B**, pg. 41 ("All tips received by any tipped employee will be retained by the employee, except for any contribution to a valid tip pool/share (or due to an appropriate credit card fee), which shall be limited to only those employees who customarily and regularly receive tips.); *see also* **Exhibit B**, pg. 84 ("I will retain all the tips I receive except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips").

67. At all relevant times, Defendants knowingly and willfully operated their business with a policy of unlawfully retaining tips and gratuities from Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members, in violation of the FLSA and the NYLL.

**v. <u>Plaintiff's Invalid Meal Credit Claim</u>**

68. Throughout Plaintiff's employment, Defendants improperly deducted a meal credit from Plaintiff's wages as may be permitted under FLSA § 203(m) and 12 NYCRR § 146-1.9. However, Defendants made such deductions regardless of whether the meals which

Defendants offered (i) satisfied New York State's nutritional requirements containing all four (4) food groups[5], (ii) were actually furnished to and eaten by employees[6], or (iii) actually incurred any separate expenses or reasonable costs upon Defendants.[7][8]

69. Throughout Plaintiff's employment, all of the meals Defendants offered to Plaintiff and other employees consisted of leftover foods and food waste, and never included any proteins, among other required nutrition. Accordingly:

i. Defendants' employee meals did not fulfill the nutritional requirements of the FLSA and the NYLL;

ii. Due to the poor quality and lack of nutritional value of Defendants' employee meals, Plaintiff regularly did not consume the meals Defendants offered. Despite this, Defendants still deducted meal credits from Plaintiff's wages for every shift she worked; and

iii. Because Defendants' employee meals consisted of entirely leftover foods and food waste, Defendants' employee meals never actually incurred any separate expenses or reasonable costs upon Defendants as Defendants' budgeting and profit margin calculations already factor in unsold foods and food waste. Therefore, Defendants purely profited from their meal credit deductions.

70. At all relevant times, FLSA Collective Plaintiffs and Class Members similarly had meal credits improperly deducted from their wages for similar reasons.

---

[5] 12 N.Y.C.R.R. § 146-3.7(a)
[6] 12 N.Y.C.R.R. § 146-3.7(b)
[7] 29 U.S.C. § 203(m)
[8] 29 C.F.R. § 531.3

71. Defendants' willfulness here is evident because Defendants' own handbook states (misleadingly) that they would only deduct a meal credit from an employee's wage if the employee "participates" in the credited meal. **Exhibit B**, pg. 29. Defendants were aware they were lawfully required to deduct meal credits only when an employee eats a meal, and mislead employees to believe that Defendants would, yet they actually still deducted meal credits from employees' wages when they did not eat Defendants' meals.

72. At all relevant times, Defendants knowingly and willfully operated their business with a policy of unlawfully deducting meal credits from Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

**vi. Plaintiff's Unpaid Spread of Hours Premiums Claim**

73. At all relevant times, Defendants failed to pay spread of hours premiums to Plaintiff and Class Members for all their workdays with a spread of ten (10) or more hours, in violation of the NYLL.

74. Approximately once per month throughout her employment, Plaintiff was required by Defendants to work double shifts lasting up to 12 hours. However, Defendants failed to pay Plaintiff any of her owed spread of hours premiums for each of these workdays.

75. At all relevant times, Defendants similarly failed to pay Class Members their owed spread of hours premiums.

76. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay spread of hours premiums to Plaintiff and Class Members, in violation of the NYLL.

**vii. Plaintiff's Unpaid Call-In Pay Premiums Claim**

77. At all relevant times, Defendants failed to pay call-in pay premiums to Plaintiff and Class Members for all their instances of reporting to work for a scheduled shift which lasted less than three (3) hours, in violation of the NYLL.

78. Throughout her employment, Plaintiff was regularly sent home by Defendants after reporting to work for a scheduled shift and working for less than three (3) hours, usually around 20 minutes. Class Members were similarly regularly sent home early after reporting to work for scheduled shifts for less than three (3) hours.

79. However, Defendants failed to pay Plaintiff and Class Members their owed call-in pay premiums for every workday lasting less than three (3) hours.

80. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay call-in pay premiums to Plaintiff and Class Members for each of their workdays lasting ten or more hours, in violation of the NYLL.

**viii. Plaintiff's WTPA Violation Claim**

81. At all relevant times, Defendants failed to provide wage notices and accurate wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA")—incorporated into the NYLL.

82. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may

not have information about'" to an extent sufficient to support standing.

83. New York Court continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, at *61 (S.D.N.Y. February 23, 2026) (internal citations omitted).

84. Here, Defendants' conduct is has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

85. By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of

social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their Social Security benefits—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

86. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

87. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

88. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

(On Behalf of Plaintiff and FLSA Collective Plaintiffs)

89. Plaintiff realleges and incorporates the above allegations as fully stated herein.

90. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

91. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

92. At all relevant times, each of the Corporate Defendants had gross annual revenues in excess of $500,000.

93. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, due to an invalid tip credit policy.

94. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, due to Defendants' timeshaving policy.

95. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper tips, due to an illegal gratuity retention policy.

96. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper wages due to an improper meal credit policy.

97. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these

records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

98. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper wages and overtime premiums, when Defendants knew or should have known such was due.

99. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

100. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

101. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, unpaid overtime wages, unpaid gratuities, invalid tip credit deductions, invalid meal credit deductions, and liquidated damages for unpaid wages, overtime, and gratuities.

102. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

(On Behalf of Plaintiff and Class Members)

103. Plaintiff realleges and incorporates the above allegations of this Complaint as fully stated herein.

104. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

105. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

106. Defendants willfully violated Plaintiff's and Tipped Subclass Members' rights by failing to pay them the lawful minimum wage for all hours worked. As factually described above, Defendants were not entitled to claim any tip credits from Plaintiff's and Tipped Subclass Members' wages under the NYLL.

107. Defendants willfully violated Plaintiff's and Tipped Subclass Members' rights by subjecting them to an improper policy and practice in which they were required to engage in non-tipped work for: (i) continuous periods of time exceeding 30 minutes; and/or (ii) more than 2 hours or 20% of each of their workweeks.

108. Defendants willfully violated Plaintiff's and Tipped Subclass Members' rights by illegally retaining their rightfully earned gratuities.

109. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to an improper meal credit policy.

110. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to an unlawful timeshaving policy and failing to pay them wages and overtime premiums for all hours they worked.

111. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their properly owed spread of hours premiums.

112. Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

113. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

114. Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their (i) unpaid minimum wages, (ii) unpaid regular wages, (iii) unpaid overtime wages, (iv) unpaid gratuities, (v) unpaid spread of hours premiums, (vi) invalid meal credit deductions, (vii) unpaid call-in pay premiums, (viii) liquidated damages for unpaid wages, overtime, gratuities, and premium pay, (ix) statutory penalties, (x) reasonable attorneys' fees, and (xi) costs and disbursements of this action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including minimum wages and overtime, as a result of Defendants' invalid tip credit policy, due under the FLSA and the NYLL;

d. An award of unpaid wages and overtime premiums as a result of Defendants' timeshaving policy, due under the FLSA and the NYLL;

e. An award of disgorgement of all unlawfully retained tips and gratuities, due under the FLSA and the NYLL;

f. An award of disgorgement of all invalid meal credit deductions, due under the FLSA and the NYLL;

g. An award of unpaid spread of hours premiums, due under the NYLL;

h. An award of unpaid call-in pay premiums, due under the NYLL;

i. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

j. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

k. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

l. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

m. Designation of this action as a collective action pursuant to 29 U.S.C. §216(b);

n. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

o. Designation of this action as a class action pursuant to F.R.C.P. Rule 23;

p. Designation of Plaintiff as Representative of the Class;

q. Designation of Plaintiff as Representative of the Tipped Subclass; and

r. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: March 25, 2026
New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

By: /s/ *C.K. Lee*
C.K. Lee, Esq.